IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHEN ANTHONY BERNAL, | § § § | |
| *Plaintiff*, | § § § | 5-17-CV-00080-OLG-RBF |
| vs. | § § § | |
| GERALD TREVINO JR., CORRECTIONAL OFFICER FOR BEXAR COUNTY ADULT DETENTION CENTER | § § § § § § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the Motion for Summary Judgment filed by Defendant Gerald Trevino, Jr. *See* Dkt. No. 48. All pretrial matters in this action have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 25. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's Motion, Dkt. No. 48, be **DENIED**.

**Factual and Procedural Background**

This § 1983 excessive-force action stems from a February 4, 2015, altercation between Plaintiff Stephen Anthony Bernal and Bexar County Adult Detention Corrections Officer Gerald Trevino Jr. The parties dispute the events giving rise to the altercation. The parties, however, agree that the incident began shortly after Bernal approached Officer Trevino to inquire about the status of property Bernal gave to Trevino to place in the inmate-storage room. *See* Bernal Decl.

(Dkt. No. 51-1) ¶ 7; Trevino Decl. (Dkt. No. 48-3) ¶ 3. The parties' versions of events diverge from this point on, with each providing a competing version of the facts supported by a sworn declaration. *See* Bernal Decl.; Trevino Decl. There is no video evidence.

According to Bernal, Officer Trevino grew angered by his benign inquiries. He accused Bernal of calling him a "fucking thief" and ordered Bernal to "[g]o back to [his] fucking bunk right now before something bad happens." Bernal Decl. ¶¶ 9, 11. Complying with the order, Bernal walked back to his bunk. *See id.* ¶¶ 12-13. Hearing a commotion, an inmate asked Bernal what had transpired, which led Bernal to say, "[f]orget him." *Id.* ¶¶ 13-14. This offhand remark, according to Bernal, only further enraged Trevino, who quickly and without any other provocation ran up to Bernal, lunged, chest-bumped Bernal, and struck Bernal in his face and near his ear several times. *See id.* ¶ 15. According to Bernal, Trevino then dragged Bernal to the bathroom near Bernal's bunk and continued to strike him. *Id.* ¶ 16. Fearing for his life, Bernal concedes that at this point he briefly fought back. *Id.* ¶ 17. But recognizing that he was bleeding and badly injured, Bernal retreated into the dayroom and laid down on the floor, placing his hands up in the air. *Id.* ¶¶ 19-21. Trevino, according to Bernal, still didn't end his assault. With Bernal on the ground, Trevino dropped his knee into Bernal's back and continued punching Bernal until a team of correctional officers intervened. *Id.* ¶¶ 22, 24.

Officer Trevino tells a much different story. He paints Bernal as the aggressor who refused multiple orders to return to his bunk. *See* Trevino Decl. ¶ 4-5. Concerned that Bernal's "loud and boisterous" accusations of theft would incite other inmates in the unit, Trevino moved to escort Bernal to his bunk to deescalate the situation. *See id.* ¶ 6. But Bernal, says Trevino, refused to let matters rest. Bernal, according to Trevino, turned around and chest-bumped Trevino while screaming that Trevino had stolen his property. *See id.* Trevino maintains that he

resisted employing any force. Instead, as he tells the story, Trevino simply used both hands to push Bernal away. *See id.* Undeterred, Bernal rushed at Trevino with a closed fist, attempting (unsuccessfully) to strike Trevino in the face. *See id.* Fearing for his safety, Trevino—for the first time in the incident—struck Bernal in the face. *See id.* ¶ 7. Bernal wouldn't be subdued. He instead grabbed Trevino by the shirt and pulled him into the shower area, causing Trevino to slip and fall to the floor. *See id.* Bernal then climbed on top of Trevino and struck him in the face with a closed fist. *See id.* ¶ 8. Trevino explains he was then able to extricate himself by pulling Bernal's shirt over his head and tugging him to the ground. *See id.* Bernal, however, stood up and struck Trevino in the back of the head and attempted (unsuccessfully) to do so once more. *See id.* After blocking Bernal's second punch, Trevino explains, he struck Bernal in the head for the second time, which finally subdued Bernal (at least for the time being). *See id.* Trevino then escorted Bernal back to his officer station, placed him on the floor face down with his hands behind his back, and called for emergency assistance. *See id.*

The fight, however, wasn't over, according to Trevino. Once again Bernal rose up and attempted to strike Trevino with a closed fist. *See id.* ¶ 9. In an effort to stop the assault, Trevino struck Bernal in the head for a third time, causing Bernal to fall to the ground. *See id.* Undeterred, Bernal stood up and grabbed Trevino, attempting to bring him to the ground. *See id.* Trevino, however, finally subdued Bernal by holding his arms around Bernal until assistance arrived. *See id.*

According to Trevino, during the entire altercation he used every reasonable effort to use the least amount of force possible, while protecting himself and attempting to restore order. *See id.* ¶ 12. When Sergeant Dorian Saldana arrived at the scene, she observed Trevino with both of

his arms around Bernal. *See* Saldana Decl. (Dkt. No. 48-5) ¶ 3. She didn't observe Trevino punch, kick, hit, or otherwise make physical contact with Bernal. *See id.*

Officers handcuffed Bernal and took him to the infirmary where he was treated for a 2-centimeter laceration to his scalp as well as multiple facial bruises and swelling. *See* Dkt. No. 48-1 at 3-4. Medical personnel treated Bernal's laceration with dermabond and provided him with an ice pack for the swelling. *See id.* Bernal then spent three months in segregation but didn't face any new charges stemming from the fight. *See* Bernal Decl. ¶ 27. As a result of the incident and in addition to the aforementioned bruising and laceration, Bernal claims that his ribs hurt and he suffered anxiety, weight loss, and a decrease in appetite, all of which led him to seek mental-health treatment during his imprisonment on several occasions. *See id.* ¶ 29; *see also* Dkt. No. 48-1 at 5; Dkt. No. 51-3 at 4-10. Trevino, for his part, received treatment to his right hand, which swelled from striking Bernal in the head. *See* Dkt. No. 51-3 at 2-3.

At Bernal's insistence, the Bexar County Sheriff's Office conducted a full investigation into Officer Trevino's conduct, ultimately siding with Trevino and also determining that Bernal was the aggressor. *See* Dkt. No. 48-6 at 2-12. Trevino nevertheless received a Letter of Reprimand for his role in the altercation. *See* Dkt. No. 51-2. According to the letter, Trevino failed to have a duress box on his person when the altercation started, and Trevino further violated Department policy when he approached an inmate who was displaying aggressive behavior. *See id.*

On February 3, 2017, Bernal initiated this action via § 1983 against (1) Trevino, both in his individual and official capacities; (2) Javier Salazar, in his official capacity as a Sheriff for Bexar County; and (3) Bexar County. *See* Dkt. No. 7. Bernal claimed that Trevino used excessive force and that after the alleged assault, he was denied medical treatment and placed in

isolation, which further exacerbated his injuries. *See id.* Bernal's official-capacity claims against Sheriff Salazar and Officer Trevino were dismissed, as were the claims against Bexar County. Only the excessive-force claim against Trevino in his individual capacity remains. *See* Dkt. No. 26, *adopted by* Dkt. No. 36. Trevino now moves for summary judgment. *See* Dkt. No. 48.

**Analysis**

The only issue on summary judgment is whether Officer Trevino enjoys qualified immunity with respect to Bernal's excessive-force claim. To overcome Trevino's assertion of qualified immunity, Bernal must point to evidence sufficient to raise a genuine issue of material fact suggesting both that Trevino's conduct violated a constitutional right and that his actions were objectively unreasonable in light of clearly established law as of the time of the conduct in question. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Because credibility issues aren't resolved at summary judgment, and because under Bernal's version of events he was subject to an unprovoked beating by Trevino, summary judgment for Trevino isn't warranted.

A. First, there's a triable issue regarding whether Trevino's actions violated a constitutional right. A state prisoner's excessive-force claim is governed by either the Fourteenth or Eighth Amendment, depending on the timing of events giving rise to the claim. *See Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). Here, Trevino asserts (and Bernal doesn't dispute) that the altercation occurred after Bernal's conviction, *see* Dkt. No. 48 at 6, and Bexar County public records, of which the Court takes judicial notice, *see* Fed. R. Evid. 201(b), confirm this fact.[1] Bernal also concedes this is the appropriate analytical framework here, notwithstanding his

---

[1]*See* https://search.bexar.org/Case/CaseDetail?r=e273df83-1ae8-4d34-8f8b-4391812b9ed1&st=s&s=0929504&cs=&ct=&=,,&full=y&&p=1_2009CR7017+++++D1441354183100000 (providing that Bernal was sentenced on October 17, 2013 to a two-year term of imprisonment).

Complaint's invocation of the Fourth Amendment. Accordingly, the Eighth Amendment governs Bernal's claim. *See Graham*, 490 U.S. at 395 n.10.

Eighth Amendment excessive-force claims center around "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6, 112 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Several nonexclusive factors inform this inquiry, including: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 7; *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). Given the parties' divergent narratives, and drawing all inferences in Bernal's favor as the Court must do at this stage,[2] there is a genuine issue of material fact regarding whether Trevino used excessive force against Bernal.

To start, the parties disagree regarding who provoked the fight, when Trevino was effectively restrained, and how much force Trevino used against Bernal. These fact disputes directly implicate the second, third, fourth, and fifth *Hudson* factors, all of which concern the relationship between the threat posed by Bernal and Trevino's response to it. If, as Bernal asserts, Trevino's actions were provoked by nothing except an inquiry about Bernal's property (however loudly that might've been) and Bernal's rapid return to his bunk in conformity with Trevino's order, then there would've been no justification for the use of force. Certainly, Trevino wouldn't have needed to continue striking Bernal once Bernal lay prone with his hands in the air.

---

[2] *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993); *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant").

*See, e.g.*, *Kitchen v. Dallas County*, 759 F.3d 468, 478 (5th Cir. 2014), *abrogated in part by Kingsley v. Hendrickson*, 576 U.S. 389 (2015) ("[C]ourts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."). At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986). While Trevino could use Bernal's lack of a corroborating witness to question Trevino's version of events at trial, Bernal's credibility remains an issue for the factfinder to resolve. To find in Trevino's favor at this juncture would necessarily involve crediting Trevino's version of the incident over Bernal's, which the Court cannot do at summary judgment. *See id.; see also Hill v. Henry*, No. C.A. No. C–11–127, 2012 WL 2319096, at *8-9 (S.D. Tex. May 1, 2012) (denying defendant's motion for summary judgment on qualified immunity grounds in light of the parties' "vastly different accounts of the events" forming the factual basis of plaintiff's excessive force action).

Turning to the first *Hudson* factor for the sake of completeness, the extent of an inmate's injury is "only one facet of a broader inquiry," *McGuffey v. Blackwell*, 784 F. App'x 240, 243 (5th Cir. 2019), that "may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). It is not alone determinative. *See Hudson*, 503 U.S. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."); *McGuffey*, 784 F. App'x at 243 (district court erred in dismissing plaintiff's excessive force claims as frivolous "for the mere reason that [the plaintiff] received only a bruise following [the correctional officer's] jab to his shoulder). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*,

559 U.S. at 38. Taking Bernal's version of events as true, which—again—the Court must do here, Trevino gratuitously assaulted Bernal. The Eighth Amendment doesn't permit such conduct. Further, a *de minimis* injury is distinct from a *de minimis* use of force, and only the later informs the first *Hudson* factor. *See id.* ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."); *Brown v. Lippard*, 472 F.3d 384, 386 n. 1 (5th Cir. 2006) ("The Supreme Court in *Hudson* was concerned with a *de minimis* use of force showing, not a *de minimis* injury.").

Although some Fifth Circuit cases have suggested that inmates must demonstrate that they suffered more than a *de minimis* injury as part of a threshold showing for excessive force claims,[3] that line of cases need not be explored here. Although Bernal's alleged physical and psychological injuries might not be "significant," they can't be categorized as *de minimis*. *See, e.g.*, *Gomez v. Chandler*, 163 F.3d 921, 924-25 (5th Cir. 1999) (refusing to grant summary judgment on *de minimis* injury grounds where prisoner alleged "physical pain [and] bodily injuries in the form of cuts, scrapes, [and] contusions to the face, head, and body); *Edwards v. Stewart*, 37 Fed. App'x 90 (5th Cir. May 10, 2002) (holding that injuries consisting of "cuts to [the prisoner's] fingers and thumb, headache, neck pain, and lacerations to the ear," weren't *de minimis*, particularly because the prisoner received medical treatment for the injuries).

B.     A similar result pertains with respect to the remainder of the qualified-immunity inquiry. Accepting Bernal's account of events as true, a reasonable officer in Trevino's position would've known that assaulting a prisoner in the manner alleged is unlawful. Further, a prisoner's constitutional right to be free from the malicious and sadistic use of force was clearly

---

[3] *See, e.g.*, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *but cf. Lippard*, 472 F.3d at 384 ("This Court has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an excessive force claim").

established at the time the altercation between Trevino and Bernal occurred, including in fact scenarios virtually indistinguishable from the one presented. *See, e.g.*, *Hudson*, 503 U.S. at 4 (noting, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment").

For these reasons, Trevino's motion for summary judgment should be denied.

## Conclusion and Recommendation

For the reasons set forth below, it is recommended that Defendant's Motion for Summary Judgment, Dkt. No. 48, be **DENIED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in

this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 21st day of August, 2020.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE